1  BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
   Alan R. Plutzik (Bar No. 077785)
2  L. Timothy Fisher (Bar No. 191626)
   Kathryn A. Schofield (Bar No. 202939)
3  2125 Oak Grove Road, Suite 120
   Walnut Creek, California 94598
4  Telephone: (925) 945-0200
   Facsimile: (925) 945-8792
5
   SCHIFFRIN & BARROWAY, LLP
6  Eric L. Zagar
   Sandra G. Smith
7  280 King of Prussia Road
   Radnor, PA 19087
8  Telephone: (610) 667-7706
   Facsimile: (610) 667-7056
9
   Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUNANDA A. DESAI, as Trustee of and for the SUNANDA A. DESAI REVOCABLE TRUST, Derivatively on Behalf of Nominal Defendant FOUNDRY NETWORKS, INC., <br><br>Plaintiff,<br><br>v.<br><br>BOBBY R. JOHNSON, JR., LAURENCE L. AKIN, TIMOTHY D. HEFFNER, KEN K. CHENG, KARL D. TRIEBES, LEE CHEN, WILLIAM S. KALLAOS, ROBERT W. SHACKLETON, C. NICHOLAS KEATING, ALFRED J. AMOROSO and J. STEVEN YOUNG,<br><br>Defendants,<br><br>and,<br><br>FOUNDRY NETWORKS, INC.<br><br>Nominal Defendant. | Case No. C06-05598<br><br>**SHAREHOLDER DERIVATIVE COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

SHAREHOLDER DERIVATIVE COMPLAINT
CASE NO.
48637

Plaintiff, by his attorneys, submits this Derivative Complaint (the "Complaint") against the defendants named herein.

## NATURE AND SUMMARY OF THE ACTION

1. This is a shareholder's derivative action brought for the benefit of nominal defendant Foundry Networks, Inc. ("Foundry" or the "Company") against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, unjust enrichment, statutory violations, and other violations of law.

2. In gross breach of their fiduciary duties as officers and/or directors of Foundry, the Individual Defendants (as defined herein) colluded with one another to:

   (a) improperly backdate dozens of grants of Foundry stock options to Foundry Chief Executive Officer Bobby R. Johnson, Jr. and several other Foundry executives, in violation of the Company's shareholder-approved stock option plans;

   (b) improperly record and account for the backdated stock options, in violation of Generally Accepted Accounting Principles;

   (c) improperly take tax deductions based on the backdated stock options, in violation of Section 162(m) of the Internal Revenue Code; and

   (d) produce and disseminate to Foundry shareholders and the market false financial statements and other SEC filings that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options.

3. As a result of the Individual Defendants' egregious misconduct, Foundry has sustained millions of dollars in damages, and Johnson and the other recipients of the backdated stock options have garnered millions of dollars in unlawful profits.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

5.      Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district. One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## PARTIES

6.      Plaintiff Sunanda A. Desai, as Trustee of and for the Sunanda A. Desai Revocable Trust, is, and was at all relevant times, a shareholder of nominal defendant Foundry.

7.      Nominal defendant Foundry is a Delaware corporation with its principal executive offices located at 4980 Great America Parkway, Santa Clara, California 95054. According to its public filings, Foundry designs, develops, manufactures, markets and sells solutions to meet the needs of high-performance network infrastructures for Layer 2-7 switching and routing and wired and wireless local area networks, metropolitan area networks, wide area networks, and the worldwide web.

8.      Defendant Bobby R. Johnson, Jr. ("Johnson") has served as the Company's President, Chief Executive Officer, and Chairman of the Board of Directors since he co-founded the Company in 1996.

9.      Defendant Laurence L. Akin ("Akin") has served as the Company's Senior Vice President of Worldwide Sales since October 2002. Akin also served as the Company's Vice President of Sales for the Americas from April 2001 to September 2002, and as Vice President of Sales Operations from November 2000 to March 2001.

10.     Defendant Timothy D. Heffner ("Heffner") has served as the Company's Vice President, Finance and Administration, and Chief Financial Officer since November 1996.

11.     Defendant Ken K. Cheng ("Cheng") has served as the Company's Vice President and General Manager, High Value Layer 2/3 Systems Business Unit since January 2003. Cheng also served as the Company's Vice President of Marketing from December 1999 to December

2002, and as Vice President of Product and Program Management from July 1998 to November 1999.

12. Defendant Karl D. Triebes ("Triebes") served as the Company's Chief Technology Officer and Vice President of Engineering from January 2003 to August 2004. Triebes also served as the Company's Vice President of Hardware Engineering from June 2001 to January 2003.

13. Defendant Lee Chen ("Chen") served as a senior non-officer employee of the Company from March 2003 to September 2004. Chen also served as the Company's Vice President, Software Engineering and Quality Assurance from October 1999 to March 2003, and as Director of Software Engineering from June 1996 to September 1999.

14. Defendant William S. Kallaos ("Kallaos") served as the Company's Vice President of International Sales from April 1997 to December 2001.

15. Defendant Robert W. Shackleton ("Shackleton") served as the Company's Vice President of North American Sales from April 1997 to in or about 2001.

16. Collectively, defendants Johnson, Akin, Heffner, Cheng, Triebes, Chen, Kallaos, and Shackleton are referred to herein as the "Officer Defendants."

17. Defendant C. Nicholas Keating ("Keating") has served as a director of Foundry since October 2000, as a member of the Audit Committee of the Board ("Audit Committee") since January 2001, and as a member of the Compensation Committee of the Board ("Compensation Committee") since November 2001.

18. Defendant Alfred J. Amoroso ("Amoroso") has served as a director of Foundry since October 2000 and as a member of the Audit Committee since November 2001.

19. Defendant J. Steven Young ("Young") has served as a director of Foundry since 2000, and as a member of the Compensation Committee since November 2001.

20. Collectively, defendants Keating, Amoroso, and Young are referred to herein as the "Committee Defendants."

21. Collectively, the Officer Defendants and Committee Defendants are referred to herein as the "Individual Defendants."

/ / /

# DUTIES OF THE INDIVIDUAL DEFENDANTS

22. By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

23. The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

24. To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

(a) exercise good faith in ensuring that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business;

(b) exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

(c) exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or

examinations, audits, or other financial information concerning the financial condition of the Company;

(d) exercise good faith in ensuring that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and

(e) refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

25. The Individual Defendants were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information. According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure. Among other things, the Individual Defendants were required to:

(1) make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

(2) devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

(a) transactions are executed in accordance with management's general or specific authorization; and

(b) transactions are recorded as necessary to permit preparation of financial statements in conformity with [GAAP].

26. Foundry's Audit Committee Charter provides that the Audit Committee shall be responsible for, among other things,

(a) fulfilling the purpose of the Audit Committee by:

- overseeing the accounting and financial reporting processes, and the internal and external audits of the Company;

- providing to the Board of Directors the results of its examinations and recommendations derived therefrom;

SHAREHOLDER DERIVATIVE COMPLAINT 5
48637

- outlining to the Board improvements made, or to be made, in internal accounting controls;
- providing the Board such additional information and materials as it may deem necessary to make the Board aware of significant financial matters which require Board attention;

(b) meeting separately with the Chief Executive Officer and separately with the Chief Financial Officer of the Company at least quarterly to review the financial affairs of the Company;

(c) meeting with the independent accountants of the Company at least once quarterly, including upon the completion of the annual audit, outside the presence of management, and at such other times as it deems appropriate to review the independent accountants' examination and management report; and

(d) taking such actions as may be necessary or desirable to comply with applicable rules and regulations promulgated under the Sarbanes-Oxley Act or by the SEC or the Nasdaq National Market or by any other applicable governmental agency.

## FACTUAL ALLEGATIONS

### Stock Option Grants to the Officer Defendants

27. At all times relevant hereto the Compensation Committee determined the salaries, incentive compensation, and stock option awards for executive officers of Foundry and administered the Company's stock option plans.

28. From 2000 to 2002, the Compensation Committee granted certain Foundry stock options to the Officer Defendants, as follows:

| Officer | Purported Date of Grant | Exercise Price | Number of Options |
|---|---|---|---|
| Johnson | 8/7/02 | $7.94 | 600,000 |
| Akin | 1/9/01 | $11.375 | 42,500 |
|  | 3/30/01 | $7.50 | 50,000 |
|  | 4/27/01 | $13.35 | 100,000 |

|   |   |   |   |   |
|---|---|---|---|---|
| 1 |         | 2/5/02  | $6.14   | 100,000 |
| 2 |         | 5/6/02  | $4.94   | 180,000 |
|   | Heffner | 2/5/02  | $6.14   | 125,000 |
| 3 |         | 5/6/02  | $4.94   | 150,000 |
| 4 |         |         |         |         |
|   | Cheng   | 5/22/00 | $59.69  | 80,000  |
| 5 |         | 1/9/01  | $11.375 | 85,000  |
|   |         | 2/5/02  | $6.14   | 150,000 |
| 6 |         | 5/6/02  | $4.94   | 175,000 |
| 7 |         |         |         |         |
|   | Triebes | 2/5/02  | $6.14   | 105,000 |
| 8 |         | 5/6/02  | $4.94   | 180,000 |
| 9 |         |         |         |         |
|   | Chen    | 5/22/00 | $59.69  | 200,000 |
| 10|         | 1/9/01  | $11.375 | 85,000  |
|   |         | 2/5/02  | $6.14   | 250,000 |
| 11|         | 5/6/02  | $4.94   | 300,000 |
|   | Kallaos | 5/22/00 | $59.69  | 80,000  |
| 12|         | 1/9/01  | $11.375 | 85,000  |
| 13|         | 3/30/01 | $7.50   | 40,000  |
|   | Shackleton | 5/22/00 | $59.69 | 80,000 |

29. Pursuant to the terms of the Company's shareholder-approved stock option plans, the exercise price of options must be no less than the closing sales price of Foundry stock on the date of grant.

30. Pursuant to APB 25, the applicable GAAP provision at the time of the foregoing stock option grants, if the market price on the date of grant exceeds the exercise price of the options, the company must recognize the difference as an expense.

31. Pursuant to Section 162(m) of the Internal Revenue Code, 26 U.S.C. § 162(m) ("Section 162(m)"), compensation in excess of $1 million per year, including gains on stock options, paid to a corporation's five most highly-compensated officers is tax deductible only if: (i) the compensation is payable solely on account of the attainment of one or more performance goals; (ii) the performance goals are determined by a compensation committee comprised solely of two or more outside directors, (iii) the material terms under which the compensation is to be paid, including the performance goals, are disclosed to shareholders and approved by a majority of the

SHAREHOLDER DERIVATIVE COMPLAINT                                                7
48637

vote in a separate shareholder vote before the payment of the compensation, and (iv) before any payment of such compensation, the compensation committee certifies that the performance goals and any other material terms were in fact satisfied.

32. In a striking pattern that could not have been the result of chance, each and every one of the foregoing stock option grants was dated just after a sharp drop and just before a substantial rise in Foundry's stock price, as demonstrated in the following chart:

**Summary of Option Grants and Surrounding Stock Price Performance**

| Purported Date of Grant | Exercise Price | Stock Price 10 Trading Days Before Grant | Stock Price 10 Trading Days After Grant | % Rise in Stock Price After Grant |
|---|---|---|---|---|
| 5/22/00 | $59.69 | $84.50 | $99.00 | 65.8% |
| 1/9/01 | $11.375 | $14.375 | $20.9375 | 84.1% |
| 3/30/01 | $7.50 | $8.94 | $9.24 | 23.2% |
| 4/27/01 | $13.35 | $10.00 | $17.24 | 29.1% |
| 2/5/02 | $6.14 | $7.74 | $6.50 | 5.9% |
| 5/6/02 | $4.94 | $5.73 | $6.95 | 40.7% |
| 8/7/02 | $7.94 | $6.78 | $9.18 | 15.6% |

33. The reason for the extraordinary pattern set forth in the preceding paragraph is that the purported grant dates set forth therein were not the actual dates on which the stock option grants were made. Rather, at the behest of the Officer Defendants, the Committee Defendants improperly backdated the stock option grants to make it appear as though the grants were made on dates when the market price of Foundry stock was lower than the market price on the actual grant dates. This improper backdating, which violated the terms of the Company's shareholder-approved stock option plans, resulted in option grants with lower exercise prices, which improperly increased the value of the options to the Officer Defendants and improperly reduced the amounts the Officer Defendants had to pay the Company upon exercise of the options.

### Dissemination of False Financial Statements

34. As a result of the improper backdating of stock options, the Company, with the knowledge, approval, and participation of each of the Individual Defendants,

(a) violated the terms of the Company's shareholder-approved stock option plans;

(b) violated GAAP by failing to recognize compensation expenses incurred when the improperly backdated options were granted;

(c) violated Section 162(m) by taking tax deductions based on stock option grants that were not payable solely on account of the attainment of one or more performance goals and violated the terms of the Company's shareholder-approved stock option plans; and

(d) produced and disseminated to Foundry shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants.

35. The Company, with the knowledge, approval, and participation of each of the Individual Defendants, disseminated its false financial statements in, *inter alia*, the following Form 10-K filings:

(a) Form 10-K for the year ended December 31, 2000, filed with the SEC on March 29, 2001 and signed by defendants Johnson, Heffner, Amoroso, Keating, and Young;

(b) Form 10-K for the year ended December 31, 2001, filed with the SEC on April 1, 2002 and signed by defendants Johnson, Heffner, Amoroso, Keating, and Young;

(c) Form 10-K for the year ended December 31, 2002, filed with the SEC on March 31, 2003 and signed by defendants Johnson, Heffner, Amoroso, Keating, and Young.

36. Furthermore, from 2001 to 2003, the Company, with the knowledge, approval, and participation of each of the Individual Defendants, for the purpose and with the effect of concealing the improper option backdating disseminated to shareholders and filed with the SEC annual proxy statements that falsely reported the dates of stock option grants to the Officer Defendants.

37. On June 27, 2006, Foundry announced that it had received a subpoena and informal inquiry regarding certain stock option grants made between 1995 and the present. Specifically, the Company stated:

> Foundry Networks, Inc. today announced that it had received a grand jury subpoena issued by the U.S. District Court for the Northern District of California requesting documents related to the Company's granting of stock option from 1995 through the present. The Company has also received an information inquiry letter from the Securities and Exchange Commission requesting documents related to the same subject matter.

SHAREHOLDER DERIVATIVE COMPLAINT                                                                 9
48637

> The company intends to cooperate fully with both requests. Foundry Networks' Board of Directors has authorized a review of the company's stock option grant practices, which is being conducted by a Special Committee of the Board with the assistance of outside independent legal counsel.

38. On August 9, 2006, the Company filed SEC Form 12b-25, "Notification of Late Filing," stating that due to the fact that the option review was still in progress, the Company had not completed the necessary financial statements to be included in its Quarterly Report on Form 10-Q for the period ended June 30, 2006.

39. On August 17, 2006, Foundry announced that on August 14, 2006 it received a Nasdaq Staff Determination letter indicating that the Company was not currently in compliance with Nasdaq's listing requirements as set forth in Marketplace Rule 4310(c)(14) due to the delayed filing of Foundry's Form 10-Q for the quarter ended June 30, 2006, and that Foundry would initiate the appeal process by requesting a hearing before the Nasdaq Listing Qualification Panel.

### THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTIES

40. The Officer Defendants breached their fiduciary duties by:

   (a) colluding with the Committee Defendants and each other to backdate stock option grants;

   (b) colluding with the Committee Defendants and each other to violate GAAP and Section 162(m);

   (c) colluding with the other Individual Defendants and each other to produce and disseminate to Foundry shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

   (d) colluding with the other Individual Defendants and each other to file false proxy statements and false financial statements in order to conceal the improper backdating of stock options.

41. The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

42. The Committee Defendants breached their fiduciary duties by:

    (a) colluding with the Officer Defendants and each other to backdate stock option grants;

    (b) colluding with the Officer Defendants and each other to violate GAAP and Section 162(m);

    (c) colluding with the other Individual Defendants and each other to produce and disseminate to Foundry shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

    (d) colluding with the other Individual Defendants and each other to file false proxy statements and false financial statements in order to conceal the improper backdating of stock options.

43. The Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

44. As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur, loss of funds paid to the Company upon exercise of options, and costs and expenses incurred in connection with the SEC investigation of the Company.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

45. Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress defendants' breaches of fiduciary duties and unjust enrichment.

46. Plaintiff is an owner of Foundry common stock and was an owner of Foundry common stock at all times relevant hereto.

47. Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

48. As a result of the facts set forth herein, Plaintiff has not made any demand on the Foundry Board of Directors to institute this action against the Individual Defendants. Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

49. The Board currently consists of five directors: defendants Johnson, Amoroso, Keating, and Young, and director Alan L. Earhart. The following directors are incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action:

(a) Johnson, because he is directly interested in the improperly backdated stock option grants complained of herein;

(b) Keating and Young, because as members of the Compensation Committee they directly participated in and approved the improper backdating of stock options, as alleged herein. Moreover, by colluding with the Officer Defendants and others, as alleged herein, Keating and Young have demonstrated that they are unable or unwilling to act independently of the Officer Defendants;

(c) Keating and Amoroso, because as members of the Audit Committee they directly participated in and approved the Company's violations of GAAP and Section 162(m), as alleged herein. Moreover, by colluding with the Officer Defendants and others, as alleged herein, Keating and Amoroso have demonstrated that they are unable or unwilling to act independently of the Officer Defendants; and

(d) Johnson, Amoroso, Keating, and Young, because as directors of the Company they directly participated in and approved the Company's filing of false financial statements and other SEC filings, as alleged herein. Moreover, by colluding with the Officer Defendants and others, as alleged herein, Johnson, Amoroso, Keating, and Young have demonstrated that they are unable or unwilling to act independently of the Officer Defendants.

50. Furthermore, demand is excused because the misconduct complained of herein was not, and could not have been, an exercise of good faith business judgment.

# COUNT I

## AGAINST THE INDIVIDUAL DEFENDANTS
## FOR BREACH OF FIDUCIARY DUTY

51. Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

52. As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

53. As alleged in detail herein, the Officer Defendants breached their fiduciary duties by:

   (a) colluding with the Committee Defendants and each other to backdate stock option grants;

   (b) colluding with the Committee Defendants and each other to violate GAAP and Section 162(m);

   (c) colluding with the other Individual Defendants and each other to produce and disseminate to Foundry shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

   (d) colluding with the other Individual Defendants and each other to file false proxy statements and false financial statements in order to conceal the improper backdating of stock options.

54. The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

55. As alleged in detail herein, the Committee Defendants breached their fiduciary duties by:

   (a) colluding with the Officer Defendants and each other to backdate stock option grants;

(b) colluding with the Officer Defendants and each other to violate GAAP and Section 162(m);

(c) colluding with the other Individual Defendants and each other to produce and disseminate to Foundry shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

(d) colluding with the other Individual Defendants and each other to file false proxy statements and false financial statements in order to conceal the improper backdating of stock options.

56. The Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

57. As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur, loss of funds paid to the Company upon exercise of options, and costs and expenses incurred in connection with the SEC investigation of the Company.

## COUNT II

### AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER

58. Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

59. Each of the Individual Defendants intentionally or recklessly employed devices, schemes, and artifices to defraud and engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Company.

60. The Company relied upon the Individual Defendants' fraud in granting the Officer Defendants options to purchase shares of Foundry common stock.

61. As a direct and proximate result of the Individual Defendants' fraud the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur, loss of funds paid to the Company upon exercise of options, and costs and expenses incurred in connection with the SEC investigation of the Company.

## COUNT III

### AGAINST THE OFFICER DEFENDANTS FOR COMMON LAW RESTITUTION/UNJUST ENRICHMENT

62. Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

63. The Officer Defendants were unjustly enriched by their receipt and retention of backdated stock option grants, as alleged herein, and it would be unconscionable to allow them to retain the benefits thereof.

64. To remedy the Officer Defendants' unjust enrichment, the Court should order them to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized.

WHEREFORE, Plaintiff demands judgment as follows:

A. Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and statutory violations;

B. Ordering the Officer Defendants to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized;

C. Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary duties;

D. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.   Granting such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury.

**CERTIFICATE OF INTERESTED ENTITIES OR PERSONS**

Pursuant to Civil Local Rule 3-16, the undersigned certifies that as of this date, other than the named parties there is no such interest to report.

Dated:  September 12, 2006         BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP

_____
Kathryn A. Schofield

Alan R. Plutzik
L. Timothy Fisher
Kathryn A. Schofield
2125 Oak Grove Road, Suite 120
Walnut Creek, California  94598
Telephone:  (925) 945-0200
Facsimile:  (925) 945-8792

SCHIFFRIN & BARROWAY, LLP
Eric L. Zagar
Sandra G. Smith
280 King of Prussia Road
Radnor, PA  19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056

Attorneys for Plaintiff

## VERIFICATION

I, ~~Arvind~~ SUNANDA Desai, hereby verify that I have reviewed the Complaint and authorized its filing and that the foregoing is true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

DATE: 9/11/06

Sunanda A. Desai
SUNANDA A. DESAI, TRUSTEE
For the Sunanda A. Desai Rev Trust