ALAN R. PLUTZIK, OF COUNSEL (S.B.N. 77785)
NICHOLE BROWNING (S.B.N. 251937)
BARROWAY TOPAZ KESSLER MELTZER &
CHECK LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, CA  94598
Telephone:  (925) 945-0770
Facsimile:  (925) 945-8792

ERIC L. ZAGAR (S.B.N. 250519)
BARROWAY TOPAZ KESSLER MELTZER &
CHECK, LLP
280 King of Prussia Road
Radnor, PA  19087
Telephone:   (610) 667-7706
Facsimile:    (610) 667-7056

LYNN LINCOLN SARKO
JULI E. FARRIS (S.B.N. 141716)
ELIZABETH A. LELAND
SHANE P. CRAMER
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone:   (206) 623-1900
Facsimile:    (206) 623-3384
*Co-Lead Counsel for Lead Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE FOUNDRY NETWORKS, INC. DERIVATIVE LITIGATION | **Civil Action No. C-06-05598-RMW** |
| This Document Relates To:<br><br>All Actions | **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date :  February 20, 2009**<br>**Time:   9:00 a.m.**<br>**The Honorable Ronald M. Whyte** |

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................ 1

II.    BACKGROUND AND PROCEDURAL HISTORY ..................................... 3

    A.    The Federal Action .......................................................................... 3

    B.    The State Actions ............................................................................. 4

III.   THE STANDARDS FOR JUDICIAL APPROVAL OF A DERIVATIVE
    SETTLEMENT ............................................................................................ 5

IV.   THE SETTLEMENT IS AN EXCELLENT RESULT FOR FOUNDRY
    AND SHOULD BE APPROVED ................................................................. 6

    A.    The Settlement achieves an excellent result ........................................ 7

    B.    The views of experienced counsel favor approval of the
            Settlement. ...................................................................................... 8

    C.    The risks, complexity and expense of ongoing litigation favor
            Settlement. ...................................................................................... 9

V.    NOTICE TO FOUNDRY'S SHAREHOLDERS WAS ADEQUATE .......... 11

VI.   THE NEGOTIATED AMOUNT OF ATTORNEY FEES AND
    EXPENSES SHOULD BE APPROVED ...................................................... 12

    A.    The Settlement confers a substantial benefit on Foundry ..................... 12

    B.    Risks of litigation ........................................................................... 13

    C.    Skill of counsel .............................................................................. 14

    D.    The agreed upon fee is comparable to awards in similar cases ............ 14

    E.    The agreed upon fee is reasonable under a lodestar analysis .............. 15

VII.  CONCLUSION ........................................................................................... 17

Notice of Motion and Motion For Final Approval of Derivative Settlement and       - i -
Memorandum of Points and Authorities In Support Thereof
Case No. C-06-05598 rmw

1
2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

CASES

5
6

*Newman v. Stein,*
  464 F.2d 689 (2d Cir. 1972)..................................................................8

7

*Boeing Co. v. Van Gemert,*
  444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980)......................12

8
9

*Cohn v. Nelson,*
  375 F. Supp. 2d 844 (E.D. Mo. 2005)...................................................5

10
11

*Ellis v. Naval Air Rework Facility,*
  87 F.R.D. 15 (N.D. Cal. 1980) ..............................................................6

12

*Fisher Bros. v. Cambridge-Lee Indus., Inc.,*
  630 F. Supp. 482 (E.D. Pa. 1985) .........................................................8

13
14

*Fletcher v. AJ Indus. Inc.,*
  266 Cal. App.2d 313 (Cal. Rptr. 2d Oct. 2, 1968) ..............................12

15
16

*Girsh v. Jepson,*
  521 F.2d 153 (3d Cir. 1975)...................................................................9

17

*Hensley v. Eckerhart,*
  461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)......................11

18
19

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
  55 F.3d 768 (3d Cir. 1995).....................................................................5

20
21

*In re Pacific Enterprises Sec. Litig.,*
  47 F.3d 373 (9th Cir. 1995) ......................................................8, 10, 13

22

*In re Walt Disney Co. Deriv. Litig.,*
  907 A.2d 693 (Del. Ch. 2005)................................................................9

23
24

*In re Washington Pub. Power Supply Sys. Sec. Litig.,*
  19 F.3d 1291 (9th Cir. 1994) ...............................................................15

25

*In re Zoran Corp. Derivative Litig.,*
  511 F. Supp. 2d 986 (N.D. Cal. 2007)...................................................9

26
27

*Ingram v. Coca-Cola Co.,*
  200 F.R.D. 685 (N.D. Ga. 2001)..........................................................12

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. C-06-05598 RMW

- ii -

*Johnson v. Georgia Highway Exp., Inc.*,
    488 F.2d 714 (5th Cir. 1974) ...................................................................12

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970) ..............................12

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ...........................................................5, 6, 8, 9

*Serrano v. Priest,*
    20 Cal.3d. 25 (1977) .................................................................................12

*Shlensky v. Dorsey,*
    574 F.2d 131 (3d Cir. 1978)........................................................................7

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ...............................................................5, 6, 13

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ..................................................................15

*Wal-Mart Stores v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005).........................................................................8

*Wiener v. Roth,*
    791 F.2d 661 (8th Cir. 1986) .......................................................................5

**OTHER AUTHORITIES**

Fed. R.Civ.P.23.1 ..........................................................................1, 5, 10, 11

Fed. R. Civ. P. 23.1(c) .......................................................................................5

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on February 20, 2009 before the Honorable Ronald Whyte, 280 South First Street, San Jose, California, Lead Plaintiffs Sunanda Desai, Jeanne McDonald and David M. Jackson will move the Court for a Final Order of Derivative Settlement, including award of attorneys' fees and reimbursement of expenses in this action.

This motion is made pursuant to Fed. R.Civ.P.23.1 and is based upon the accompanying Memorandum of Points and Authorities, the Declaration of Eric L. Zagar filed herewith, the Stipulation of Settlement ("Stipulation") and other materials attached as Exhibits ("Ex.") 1 through 16 thereto, Plaintiffs' Compendium Of Declarations In Support Of Application For Attorneys' Fees And Reimbursement Of Expenses, filed herewith, as well as the pleadings and records on file herein, and such other matters as may be presented to the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

This memorandum is submitted by Plaintiffs in support of the parties' request for final approval of the proposed settlement of the derivative claims brought on behalf of Foundry Networks, Inc. ("Foundry" or the "Company") against certain of its officers and directors.[1]  The Settlement resolves the derivative claims pending in this Court as well as two other shareholder derivative actions, one pending in Delaware Chancery Court, *Patel v. Akin, et al.,* Civil Action No. 3036-VCL, (the "Delaware Action") and one in California Superior Court, *In re Foundry Networks, Inc. Derivative Litigation,* Lead Case No. 1-06-CV 071651 (the "California State Action").

On December 5, 2008, this Court granted preliminary approval of the Settlement, authorized notice of the Settlement to Foundry shareholders, and set February 20, 2009 as the hearing date for final approval of the Settlement (the "Preliminary Approval Order").  *See*

---

[1]  Except as otherwise expressly provided, all capitalized terms used in this Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Final Approval of Derivative Settlement (the "Memo") shall have the meanings and/or definitions given in the Stipulation of Settlement ("Stipulation") entered into by and between the Parties on October 28, 2008.  *See* Exhibit 1 to the Declaration of Eric L. Zagar ("Zagar Decl.").

Docket Entry No. 123.  Pursuant to the Preliminary Approval Order, the Notice of Pendency and Settlement of Derivative Action and of Settlement Hearing (the "Notice") was disseminated to thousands of Foundry shareholders.  The Notice contained a detailed description of the proposed Settlement and the Fees and Expenses sought by Plaintiffs' Counsel, and directed that any objections to the Settlement be filed by January 30, 2009.[2]  Pursuant to the Preliminary Approval Order, Plaintiffs respectfully move this Court for entry of a final order approving the Settlement and approving an award of fees and costs to Plaintiffs' counsel.

The Settlement provides substantial benefits to Foundry, the company on whose behalf these derivative actions were brought.  For example, as part of the Settlement, the Company will receive cash payments totaling $2,117,863.95.  This amount is comprised of certain Individual Defendants' payments to the Company for gains realized from the exercise of incorrectly dated stock option grants in the amount of $1,637,863.95 and a payment from the Company's insurer in the amount of $480,000.  Moreover, Defendants Alfred J. Amoroso and Timothy C. Heffner, together with Foundry's Treasurer Michael Iburg, have agreed to reprice approximately 375,700 Foundry stock options to the higher exercise prices associated with the revised measurement dates for these stock options as determined by the Special Committee.

Second, as part of the Settlement, Foundry's Board of Directors (the "Board") has adopted or will adopt a series of valuable corporate governance reforms.  These changes were specifically designed to increase shareholder value and benefit Foundry if the acquisition by Brocade Communication Systems, Inc. ("Brocade") to purchase Foundry (the "Merger") was not consummated.[3]

The Settlement is the result of hard fought arm's-length negotiations.  For nearly a year, the parties engaged in extensive negotiations regarding a potential settlement of the Actions.

---

[2] As of the date of filing, Counsel is not aware of any objections to the proposed Settlement.

[3] On July 12, 2008, Brocade announced an agreement to acquire Foundry.  Under the agreement, Brocade agreed to pay a combination of $18.50 of cash plus 0.0907 shares of Brocade common stock in exchange for each share of Foundry common stock, representing a total value of $19.25.  The acquisition was reportedly completed on December 19, 2008.  *See* Zagar Decl., Exhibit 4.

As part of the Settlement and in recognition of the substantial benefits conferred by Plaintiffs' Counsel on the Company, the Parties negotiated the amount of attorneys' fees and expenses that Foundry would pay to Plaintiffs' Counsel.  As a result of those negotiations, Foundry's Board has agreed to pay $1.2 million in fees and expenses to Counsel for the Federal, California State and Delaware Actions, subject to Court approval.  The fees and costs were negotiated with and agreed to by Foundry, after hard-fought negotiations and only after the substantive Settlement terms were resolved.  The fees are consistent with the benefits achieved, and the substantial amount of effort and expense advanced by counsel on Foundry's behalf, on a fully contingent basis, without any assurance of recovery, in a complicated case marked by substantial litigation risks.

For all the reasons set forth herein, including the outstanding results obtained for the Company and its shareholders, Plaintiffs respectfully submit that the Court should approve the Settlement, including the negotiated amount of attorneys' fees and expenses as the Settlement is undoubtedly fair, reasonable and adequate in light of the substantial benefits that flow to the Company and the significant challenges faced by Plaintiffs in the continued prosecution of the Actions, and the potential recovery that could have possibly been achieved at any trial

## II.   BACKGROUND AND PROCEDURAL HISTORY

### A.   The Federal Action

Beginning in September 2006, four shareholder derivative actions were filed in the Northern District of California relating to alleged backdating of stock options granted to Foundry's officers and employees during between 2000 and 2006.  Zagar Decl. ¶¶7, 10.  The cases were consolidated on December 8, 2006 and Sunanda A. Desai, Jean McDonald and David M. Jackson were appointed to serve as Lead Plaintiffs and Schiffrin Barroway Topaz & Kessler LLP[4] and Keller Rohrback LLP were appointed to serve as Co-Lead Counsel.  *See* Docket Entry No. 30; Zagar Decl. ¶11.

---

[4] Effective November 18, 2008, the firm changed its name to Barroway Topaz Kessler Meltzer & Check, LLP.

On March 26, 2007, Plaintiffs filed their Consolidated Derivative Complaint ("Complaint") against certain of Foundry's present and former officers and directors, (collectively, the "Defendants"), for alleged breaches of fiduciary duties, unjust enrichment, rescission, corporate waste, and violations of § 10(b), Rule 10b-5, § 14(a), and § 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") in connection with Foundry's alleged improper granting and accounting for stock options. Zagar Decl. ¶13. Specifically, Plaintiffs allege that the Defendants allowed Foundry insiders to divert corporate assets to themselves via the manipulation of the grant dates associated with options awarded to insiders to purchase shares of Foundry stock—a scheme commonly referred to as "backdating."

On May 10, 2007, Foundry filed its Motion to Dismiss the Complaint, and Plaintiffs subsequently opposed the Motion. Zagar Decl. ¶¶16, 17. At the request of the parties, the hearing on Foundry's Motion to Dismiss was rescheduled until May 23, 2008, while the parties engaged in settlement negotiations. *Id.* at ¶¶27-33. The hearing took place on May 23, 2008, and the Court took the matter under submission. *Id.* at ¶34. On August 6, 2008, the parties filed a Joint Notice requesting a stay of the Court's ruling on the pending motion in light of the proposed Settlement. *Id.* at ¶38.

### B.     The State Actions

Derivative actions were also filed in the Delaware Chancery Court and California Superior Court, alleging similar facts and the same or similar causes of action against the same or similar Defendants. *See* Zagar Decl. ¶19-26. The proposed settlement is intended to resolve these Actions as well. *Id.*

The California State Action was filed in August 2006. On February 12, 2007, Foundry filed a Motion to Stay the California State Action pending resolution of the Federal Action. On March 20, 2007, the California Superior Court granted Foundry's motion and the California State Action remains stayed at this time.

The Delaware Action was filed on June 19, 2007. On August 10, 2007, Foundry and the individual defendants in the Delaware Action filed a Motion to Dismiss or Stay the Delaware

1  Action in deference to the Federal and California State Actions, both of which were filed prior

2  to the commencement of the Delaware Action.  The parties to the Delaware Action stipulated

3  and the Delaware court ordered, that the date for the Delaware Plaintiffs' opposition to the

4  Motion to Dismiss or stay would be extended until thirty (30) days after this Court's ruling on

5  the pending Motion to Dismiss in the Federal Action.

6  ### III.     THE STANDARDS FOR JUDICIAL APPROVAL OF A DERIVATIVE SETTLEMENT

7          There is a strong policy favoring compromises that resolve litigation, "particularly in

8  class actions and other complex cases where substantial judicial resources can be conserved by

9  avoiding formal litigation."  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d

10  768, 784 (3d Cir. 1995).  The "'[s]ettlements of shareholder derivative actions are particularly

11  favored because such litigation "is notoriously difficult and unpredictable.'"  *Cohn v. Nelson*,

12  375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (citations omitted).

13          Federal Rule of Civil Procedure 23.1 governs a district court's analysis of the fairness of

14  a settlement of a shareholder derivative action.  *Wiener v. Roth*, 791 F.2d 661 (8th Cir. 1986).

15  Under Rule 23.1, a derivative action "may be settled, voluntarily dismissed, or compromised

16  only with the court's approval.  Notice of a proposed settlement, voluntary dismissal, or

17  compromise must be given to shareholders or members in the manner that the court orders."

18  Fed. R. Civ. P. 23.1(c).

19          The Ninth Circuit has provided several factors which may be considered in evaluating

20  the fairness of a class action settlement:

21
22          The district court's ultimate determination will necessarily involve a
          balancing of several factors which may include, among others, some or
23          all of the following: the strength of plaintiffs' case; the risk, expense,
          complexity, and likely duration of further litigation; the risk of
24          maintaining class action status throughout the trial; the amount offered in
          settlement; the extent of discovery completed, and the stage of the
25          proceedings; the experience and views of counsel; the presence of a
          governmental participant; and the reaction of the class members to the
26          proposed settlement.

27
28
Notice of Motion and Motion For Final Approval of Derivative Settlement and                    - 5 -
Memorandum of Points and Authorities In Support Thereof
Case No. C-06-05598 rmw

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (citations omitted). *Accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). The Ninth Circuit, however, has cautioned that:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what ***might*** have been achieved by the negotiators.

*Id.* (emphasis in original).

The district court must exercise "sound discretion" in approving a settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375. In exercising its discretion, the Ninth Circuit has defined the limits of the inquiry to be made by the Court in the following manner: "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

## IV.   THE SETTLEMENT IS AN EXCELLENT RESULT FOR FOUNDRY AND SHOULD BE APPROVED

Plaintiffs and their counsel have diligently prosecuted this Action and, as a direct result of the prosecution of the Action and negotiations with the Individual Defendants and Foundry, the Parties have reached an agreement for the Settlement of the Action as embodied in the Stipulation. Pursuant to the Settlement, the Company has received or will receive cash payments totaling **$2,117,863.95**, comprised of $1,637,863.95 from the Individual Defendants and $480,000 paid by the Company's insurer in return for a claims release. *See* Stipulation, ¶¶3.3, 3.4; Zagar Decl. ¶¶39, 40. The $1,637,863.95 cash payment from Individual Defendants is comprised of a payment of $1,390,507.95 by or on behalf of Individual Defendants and

repayment of $247,356, representing the after-tax difference between the exercise price and adjusted price on stock option grants exercised by defendants Alfred J. Amoroso, Timothy D. Heffner, Nicholas C. Keating Jr., and J. Steven Young. *Id.* As a result of these cash payments, Foundry will recover 100% of the excess gains the Individual Defendants realized from their exercises of improperly priced options. Zagar Decl. ¶41.

In addition**,** in January 2007, several months after the filing of the complaints in the Federal and State Actions, several Foundry executives agreed to reprice their mispriced options without compensation.[5] Zagar Decl. ¶42. Specifically, Defendant Amoroso agreed to reprice 30,000 stock options which resulted in the forfeiture of $34,200 of intrinsic value; Defendant Heffner agreed to reprice 257,112 stock options which resulted in the forfeiture of $1,027,569 of intrinsic value and Iburg agreed to reprice 88,583 stock options which resulted in the forfeiture of $181,160 of intrinsic value. *Id.;* Stipulation, ¶3.2.   Thus, the total intrinsic value for the repricing for all three individuals is $1,242,929.  At the time of the repricing in January, 2001, Foundry's stock price was trading at approximately $14-$15. Hence, all of the grants, except for one, were in-the-money at the time of repricing, and therefore the repricing has real value for the Company.[6] Zagar Decl. ¶44.

### A.   The Settlement achieves an excellent result

The principal factor used in assessing the fairness of a derivative settlement is the benefit obtained by the corporation, the real party in interest, viewed against the risks of establishing liability and proving damages in the event the case is not settled, and of the cost of prolonging the litigation.  *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978).  Here, the

---

[5] Amoroso, Heffner and Iburg all agreed to amend and increase the exercise prices of certain stock options so that the exercise price equaled the share prices on the revised measurement dates incorporated in the Company's restated financial statements.

[6] In the Brocade merger, outstanding Foundry stock options were converted into options to purchase shares of Brocade stock. One of the variables for calculating the conversion value of options was the exercise price, so by repricing the options to their correct price, the options were cashed out or converted at their correct price. Accordingly, there was no improper gain for any of the Individual Defendants' unexercised options in the merger.

proposed Settlement confers to Foundry cash payments totaling $2,117,863.95, representing 100% of the excess gains the Individual Defendants realized from their exercises of improperly priced options.  Further, the proposed Settlement confers a substantial benefit on Foundry in the form of repricing of approximately 375,700 Foundry stock options, most of which were in-the-money at the time of repricing, which yields an additional $1,242,929 in value to the Company. This relief, particularly when viewed against the litigation risks, clearly represents a fair and reasonable resolution of the derivative claims.

**B.      The views of experienced counsel favor approval of the Settlement.**

When evaluating the fairness of settlement, the views of the attorneys actively conducting the litigation, are "entitled to significant weight."   *Fisher Bros. v. Cambridge-Lee Indus., Inc.,* 630 F. Supp. 482, 488 (E.D. Pa. 1985).   In this instance, experienced counsel, operating at arm's-length, have weighed all of the foregoing factors and endorse the proposed Settlement, which is therefore entitled to a presumption of fairness.  MANUAL FOR COMPLEX LITIGATION (THIRD), § 30.42 at 240 (1995); *Wal-Mart Stores v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005).

Plaintiffs and Defendants were represented by skilled counsel who are experienced in handling complex shareholder litigation. *See* Zagar Decl., ¶¶3, 37; Ex. 7 and 8.  This Court approved Plaintiffs' choice of counsel, finding that Barroway Topaz Kessler Meltzer & Check, LLP and Keller Rohrback LLP were well-qualified to serve as co-lead counsel.  *Id.; See also* Docket Entry No. 30.   Both firms enjoy national reputations for successful pursuit and resolution of class action litigation on behalf of shareholders. *Id.*  The fact that counsel for each of the parties have carefully weighed the terms of the Settlement and considered its adequacy and fairness in light of the relevant litigation risks, and have determined that the Settlement is in the best interests of their respective clients, the Company and its shareholders, strongly favors final approval of the proposed settlement.  *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) at 378 ("[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation").

1

### C.     <u>The risks, complexity and expense of ongoing litigation favor Settlement.</u>

2

The determination of a "reasonable" settlement is not susceptible to a mathematical

3

equation yielding a particularized sum. Rather, as one court explained, "there is a range of

4

reasonableness with respect to a settlement." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir.

5

1972). As the Ninth Circuit has made clear, "the very essence of a settlement is compromise, 'a

6

yielding of absolutes and an abandoning of highest hopes.'" *Officers of Justice*, 688 F.2d at

7

624 (citation omitted). In assessing the fairness, reasonableness and adequacy of the settlement,

8

the court should balance the benefits of the settlement against the continuing risks of litigation.

9

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see also Officers for Justice*, 688 F.2d at

10

625.

11

Although Plaintiffs believe that the claims asserted in the Actions were meritorious,

12

liability was by no means a foregone conclusion. Defendants presented a number of arguments

13

in the Motion to Dismiss that could have defeated the Action, including the argument that

14

Plaintiffs failed to make a pre-suit litigation demand on the Board of Directors. While Plaintiffs

15

maintain that the demand requirement must be excused because such a request would have been

16

futile, the issue was fiercely litigated, and a number of backdating cases have been dismissed on

17

this basis alone.[7]

18

Plaintiffs also faced challenges arising from applicable statutes of limitations and other

19

grounds. *See, e.g. In re Zoran Corp. Derivative Litig.,* 511 F. Supp. 2d 986, 1014-17 (N.D. Cal.

20

2007) (ruling that plaintiffs adequately alleged demand futility but that the majority of claims

21

were time-barred); *VeriSign,* 531 F. Supp. 2d at 1210-13 (same). Even assuming Plaintiffs

22

survived these initial hurdles, successful resolution through trial was by no means assured.

23

---

24

[7] *See, e.g., In re Linear Tech. Corp. Derivative Litig.,* No. C-06-3290 MMC, 2006 WL 3533024 (N.D. Cal. Dec. 7, 2006); *In re Openwave Sys. S'holder Derivative Litig.,* 503 F. Supp. 2d 1341

25

(N.D. Cal. 2007); *In re Computer Sciences Corp. Derivative Litig.,* No. CV 06-05288 MRP (Ex), 2007 WL 1321715 (C.D. Cal. Mar. 26, 2007); *In re PMC-Sierra, Inc. Derivative Litig.,* No.

26

C-06-05330 RS, 2007 WL 2427980 (N.D. Cal. Aug. 22, 2007); *In re CNET Networks, Inc.,* 483 F. Supp. 2d. (N.D. Cal 2007); *In re Infosonics Corp. Derivative Litig.,* No.

27

06cv1336BTM(WMc), 2007 WL 2572276 (S.D. Cal. Sept. 4, 2007); *In re VeriSign, Inc., Derivative Litig.,* No. C 04-4165 PJH, 2007 WL 2705221 (N.D. Cal. 2008); *In re MIPS Techs.,*

28

*Inc. Derivative Litig.,* 542 F. Supp. 2d 968 (N.D. Cal 2008).

1   Plaintiffs would still have to overcome the presumption that the Board acted in good faith,

2   under the "business judgment rule."   *See, e.g., In re Walt Disney Co. Deriv. Litig.,* 907 A.2d

3   693, 746-47 (Del. Ch. 2005); *Aronson,* 473 A.2d at 812.   Once again, while Plaintiffs believed

4   that the facts and circumstances here were sufficient to overcome the presumption, success of

5   those arguments was not guaranteed.

6          Continued litigation also would have required significant expenditures, for both

7   Plaintiffs and for Foundry, without assurance of any benefit beyond that achieved by the

8   proposed Settlement.   In addition to the costs of discovery and trial, the elements of proof

9   would have required use of expert testimony on a variety of issues, including corporate

10  governance standards, relevant accounting standards, statistical analysis and proof of damages.

11  Indeed, even if liability were proven, proving the proper measure and amount of damages

12  would have required additional litigation.   Such considerations are particularly important

13  where, as here, the Settlement recovers 100% of the excess gains the Individual Defendants

14  realized from their exercises of improperly priced options, and includes corporate governance

15  reforms that may not have been available through trial and judgment.

16         Plaintiffs also were required to consider the effects that the pending merger with

17  Brocade would have on this litigation.   As explained in more detail above, the terms of the

18  merger require that Foundry shareholders exchange their stock for shares of Brocade stock in

19  predetermined ratios.   *See,* section I, *supra.*   In the absence of a binding settlement agreement,

20  Foundry's acquisition by Brocade was likely to pose significant additional legal and procedural

21  barriers to continued litigation.

22         Based upon the record and applicable law and practical reality, it is therefore clear that

23  there were serious risks in overcoming potential defenses and in establishing liability.   Even if

24  liability was established, the amount of recoverable damages would still have posed significant

25  issues and would have been subject to further litigation.   Indeed, the Ninth Circuit, in affirming

26  the district court's approval of a settlement of a derivative action, noted that "the odds of

27  winning [a] derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely

28

1   successful." *In re Pacific Enterprises. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Thus,

2   instead of the risk of failure to achieve any benefit for Foundry inherent in continued litigation,

3   the Settlement guarantees an excellent result with the implementation of important and

4   significant corporate governance changes, and immediate financial benefits to Foundry.

5   Accordingly, the Settlement should be approved.

6   **V.     NOTICE TO FOUNDRY'S SHAREHOLDERS WAS ADEQUATE**

7          The Notice satisfies the requirements of Rule 23.1 and due process, which require

8   simply that the notice "must be sufficiently informative and give sufficient opportunity for

9   response."  *Bell Atl.*, 2 F.3d at 1317, *citing Kyriazi v. W. Elec. Co.,* 647 F.2d 388, 395 (3d Cir.

10  1981).  Here, a detailed Notice, approved by the Court, was filed with the SEC via Form 8-K

11  and made available on Foundry's website.[8]  *See* Zagar Decl. ¶55, Ex. 5 and 6.  In addition, a

12  Summary Notice, in the form approved by the court was published by Foundry in *Investor's*

13  *Business Daily.   Id.* at ¶55.  As of January 21, 2009, Plaintiffs' Counsel is not aware of any

14  objections lodged with the Court or received by counsel.  *Id.* at ¶57.

15         The Notice provides precisely the same information, if not more, than that which has

16  been deemed adequate in similar cases.  *See, e.g., Maher*, 714 F.2d at 450-451 (court-approved

17  notice held sufficient where it described nature of the action, claims asserted, general terms of

18  proposed settlement, and informed shareholders of how to obtain additional information, time

19  and location of hearing, and right to participate).  In short, the notice satisfies its essential

20  purpose under Rule 23.1 and due process, which is "to fairly apprise the [shareholders] of the

21  terms of the proposed settlement and of the options that are open to them."  *Maher*, 714 F.2d at

22  451 (citations omitted).

23

24  [8] The Notice advises shareholders of the pending litigation, the nature of the claims asserted, the

25  terms of the proposed settlement, the existence of related litigation, the scope of the release, as
    well as the time and place of the Settlement Hearing, the method for obtaining additional

26  information or access to relevant documents and the manner in which to seek information,
    object    to    the    Settlement    or    participate    in    the    hearing.    *See*

27  http://www.sec.gov/Archives/edgar/data/1090071/000095013408022039/0000950134-08-
    022039-index.htm.

28

**VI.    THE NEGOTIATED AMOUNT OF ATTORNEY FEES AND EXPENSES SHOULD BE APPROVED**

Substantial financial benefits and significant corporate governance enhancements have been conferred upon Foundry by Plaintiffs' Counsel's efforts in prosecuting the Actions and reaching the Settlement that was ultimately obtained.   In recognition of these substantial benefits, Foundry has agreed to pay an award of $1.2 million in attorneys' fees and costs, subject to approval of this Court. The award of attorneys' fees represents payment for Plaintiffs' Counsel's services in this Action, the California State Action and the Delaware Action. Plaintiffs' Counsel and Foundry agreed to attorney fees to be paid to Plaintiffs' Counsel only after the principal terms of the Settlement were agreed upon.

.     The United States Supreme Court has endorsed this type of consensual resolution of attorneys' fee issues in these kinds of cases as the ideal toward which litigants should strive.  In *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40, 53 (1983), the Supreme Court stated: "A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee."  Where there is no evidence of collusion and no detriment to the parties, the Court should give "substantial weight to a negotiated fee amount."  *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001); *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.")

**A.     The Settlement confers a substantial benefit on Foundry**

Under the "substantial benefit" doctrine, counsel who prosecute a shareholders' derivative case which confers benefits on the corporation are entitled to an award of attorneys' fees and costs.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970).  As discussed above, the Settlement achieved on behalf of Foundry is an excellent result because it confers not only remedial corporate governance measures but also recovers substantial percentage of the economic harm that resulted from the misdating of stock options as alleged in

Plaintiffs' Complaints.  As the Supreme Court has noted, "an increasing number of lower courts have acknowledged that a corporation may receive a 'substantial benefit' from a [stockholders' action], justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature . . .  regardless of the relief granted, private stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute."  *Mills v. Elec. Auto-Lite Co.,* 396 U.S. 375, 395-96 (1970) (citations omitted); *see also Boeing Co., v. Van Gemert,* 444 U.S. 472 (1980); *see also Fletcher v. AJ Indus. Inc.,* 266 Cal. App.2d 313, 320, (Cal. Rptr. 2d Oct. 2, 1968); *Serrano v. Priest,* 20 Cal.3d. 25, 34 (1977) (applying substantial benefit rule in derivative case.)

Here, in addition to monetary relief valued at $3,360,792.95, which includes both the cash payment and option repricing, described in greater detail above and in the Stipulation of Settlement, Defendants have agreed to adopt corporate governance reforms that are designed to establish proper stock option granting procedures and measures, reduce the chance of the improprieties alleged by the Plaintiffs occurring in the future, and enhance shareholder value.

### B.    Risks of litigation

The underlying actions were inherently risky, as are most shareholder derivative actions. *See., e.g. Pac. Enter.,* 47 F.3d at 378.  In this instance, as discussed above, Plaintiffs faced significant risks that their claims could be dismissed or denied for failure to make a demand on the Board of Directors, as the result of application of the relevant statutes of limitation, application of the business judgment rule or other potential defenses.  In addition, the pending merger posed additional procedural and practical obstacles to the on-going litigation, all of which favored prompt resolution of these claims.  *Id.*

The continued prosecution of these claims would certainly have involved large expenditures for both Plaintiffs and the Company, which might have eclipsed any potential recovery achieved through trial and judgment.  That Plaintiffs' Counsel carried the financial burden of this litigation, and were committed to litigating the case through trial and beyond, as necessary, also weighs in favor of the agreed upon award..  *See, e.g. Torrisi v. Tucson Elec.*

*Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993) (approving fee award to counsel "not only for the hours they had in the case to the date of the settlement, but for carrying the financial burden of the case, effectively prosecuting it and, by reason of their expert handling of the case, achieving a just settlement for the class.").

**C.**   **Skill of counsel**

As explained above, Plaintiffs' Counsel are lead or co-lead counsel in numerous similar cases filed throughout the nation and have successfully and skillfully resolved scores of other shareholder lawsuits and other complex class action litigation filed on behalf of investors and others.  *See* section IV, *supra,* Zagar Decl., ¶¶3, 37, Ex. 7 and 8.  Given the high level of skill and experience of Plaintiffs' Counsel in securities class and derivative cases and complex litigation generally, Counsel were able to devote the necessary resources to the litigation and to effectively advocate for the Company and its shareholders in order to reach a favorable and timely settlement.[9]

**D.**   **The agreed upon fee is comparable to awards in similar cases**

Review of fee awards approved in other derivative litigation settlements also weighs in favor of approval here.  *See, e.g. In re Western Digital Corp. Derivative Litig.*, Slip Op., No. 06-729 (C.D. Cal. June 9, 2008) (approving attorneys' fee award of $1.4 million for monetary and corporate governance relief)(attached to Zagar Decl. as Ex. 9); *In re Applied Micro Circuits Corp.*, Slip Op., No. 06-04269 (N.D. Cal. May 8, 2008) (approving attorneys' fee award of $905,000 for monetary and corporate governance relief) (attached to Zagar Decl. as Ex. 10); *In re Sepracor, Inc. Derivative Litig.*, Slip Op., No. 06-04057 (Mass. Sup. Ct. Jan. 4, 2008) (approving attorneys' fee award of $1.62 million for monetary and corporate governance relief) (attached to Zagar Decl. as Ex. 11); *In re Actel Corp. Derivative Litig.*, Slip Op., No. 06-05352

---

[9] Another factor sometimes considered by some courts is the presence of absence of objections from shareholders.  While the Notice informs Foundry's shareholders of their right to object, the deadline for submission of such objections does not expire until January 30, 2009 and to date Plaintiffs' Counsel have received no such objections.  If any objections are submitted, Plaintiffs will respond to them on or before February 13, 2009, the date for submission of their reply in support of this Motion.

(N.D. Cal. Jul. 7, 2008) (approving attorneys' fee award of $1.2 million for monetary and corporate governance relief) (attached to Zagar Decl. as Ex. 12); *In re KV Pharmaceuticals Derivative Litig.*, Slip Op., No. 07-00384 (E.D. Mo. Aug. 26, 2008) (approving attorneys' fee award of $1.65 million for monetary and corporate governance relief) (attached to Zagar Decl. as Ex. 13); *In re Eclipsys Corp. Derivative Litig.*, Slip Op., No. 07-80611 (S.D. Fla., Dec. 10, 2008) (approving attorneys' fee award of $2.2 million for monetary and corporate governance relief) (attached to Zagar Decl. as Ex. 14); *In re Family Dollar, Inc. Derivative Litig.*, Order and Final Judgment, No. 3:06-00510, (W.D.N.C. Aug. 13, 2007) (approving attorney's fee award of $3.5 million for monetary and corporate governance relief) (attached to Zagar Decl. as Ex. 15); *Hill, et al., v. Berden, et al.* Amended Final Judgment and Order Approving Settlement and Dismissing with Prejudice, No. 602389/2006 (*In re Barnes & Nobel Derivative Litig.*) N.Y. Sup. Ct. May 5, 2008) (approving attorney's fee award of $2.75 million for monetary and corporate governance relief) (attached to Zagar Decl. as Ex. 16).

### E.    The agreed upon fee is reasonable under a lodestar analysis

The reasonableness of the negotiated fee is also demonstrated by a lodestar analysis.[10]   In investigating, prosecuting, and settling the Actions, Plaintiffs' Counsel incurred a collective lodestar of $1,292,757.00 and expended un-reimbursed litigation costs totaling $65,296.71. Zagar Decl. ¶¶49, 50.   Thus, the Fees and Expenses Award thus equates to a modest lodestar multiplier of *.93.  Id.*

Comparison of the proposed fees to Counsel's lodestar confirms that the fee is reasonable in light of the substantial effort expended.   *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award.").   This cross-check is not designed to be a "full-blown lodestar inquiry," but rather an estimation of the value of counsel's investment in the case.   Third Circuit

---

[10]   Lodestar is calculated by multiplying the time spent by the reasonable hourly compensation of each attorney involved in the case.   *Vizcaino*, 290 F.3d at 1050.

Task Force, *Selection of Class Counsel*, 208 F.R.D. 340, 422-23 (2002).  Indeed, while courts in the Ninth Circuit "have routinely enhanced the lodestar to reflect the risk of non-payment in common-fund cases," *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299-1300 (9th Cir. 1994), the lodestar figure here is closely matched to the actual fees and costs billed to the litigation.

In similar cases, courts have routinely approved multipliers of 3 to 4.5 times lodestar, and multipliers far in excess of that amount are not uncommon.[11]  The multiplier sought here is reasonable based on the complexity of the litigation, the skill and experience of counsel, the contingent nature of the litigation and the significance of the benefits achieved.  The successful prosecution of the Actions required a high level of experience and expertise in shareholder derivative litigation, as well as the ability to provide such services under difficult circumstances against Defendants represented by large and highly-skilled law firms.  The outstanding results achieved in the Settlement are a prime example of the value created by the skill and experience of Plaintiffs' Counsel, and their efforts and results deserve to be rewarded.  Plaintiffs' Counsel efficiently and effectively litigated their clients' claims, achieving an excellent result for the Company and Foundry shareholders without unduly burdening the judicial system.  Given the effort of counsel, the complexity of the legal issues involved, and the vigorousness of Defendants' defense here, the proposed award is certainly reasonable when compared to lodestar.[12]

---

[11] In lodestar/multiplier jurisprudence, involving complex class actions, "'***multipliers of between 3 and 4.5 have been common.***'"[11]  *Rabin v. Concord Assets Group, Inc.*, No. 89 Civ. 6130 (LBS), 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (citation omitted) (emphasis added); and *Rievman v. Burlington N.R.R. Co.*, 118 F.R.D. 29, 35 (S.D.N.Y. 1987).  *See, e.g., Keith v. Volpe*, 501 F. Supp. 403, 414 (C.D. Cal. 1980) (multiplier of 3.5); *Mun. Auth. of Bloomsburg v. Pennsylvania*, 527 F. Supp. 982, 999-1000 (M.D. Pa. 1981) (4.5 multiplier); *In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322, 326-28 (N.D. Ill. 1981) (4 multiplier); *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1358 (N.D. Ill. 1974) (multiplier of 4 awarded).

[12] The proposed $1.2 million award is intended to cover both fees and expenses.  Inclusion of the litigation expenses is appropriate.  "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."  *Omnivision*, 2008 WL 123936, at *11; *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

**VII.    <u>CONCLUSION</u>**

The Settlement is the result of hard-fought litigation and extensive arm's-length negotiations and provides meaningful relief to Foundry and its shareholders.  The award sought by Plaintiffs' Counsel is also reasonable given the substantial efforts of Counsel to pursue the legal rights of Foundry and its shareholders, in light of the risks undertaken and results achieved.  Plaintiffs respectfully request, therefore, that this Court grant the Motion for Final Approval of Derivative Settlement, including the requested award for fees and costs.

DATED this 21st day of January, 2009

<u>/s/ Nichole T. Browning</u>

Alan R. Plutzik, Of Counsel
Nichole T. Browning
Barroway Topaz Kessler Meltzer & Check, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, CA  94598
Telephone:   (925) 945-0770
Facsimile:   (925) 945-8792

Eric L. Zagar
Barroway Topaz Kessler Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA  19087
Telephone:    (610) 667-7706
Facsimile:    (610) 667-7056

Lynn Lincoln Sarko
Juli E. Farris
Elizabeth A. Leland
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Telephone:   (206) 623-1900
Facsimile:   (206) 623-3384

***Co-Lead Counsel for Lead Plaintiffs***

Notice of Motion and Motion For Final Approval of Derivative Settlement and                - 17 -
Memorandum of Points and Authorities In Support Thereof
Case No. C-06-05598 rmw

1

2

<u>CERTIFICATE OF SERVICE</u>

3

I, Nichole T. Browning, hereby certify that a true and correct copy of the foregoing

4

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE

5

SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

6

THEREOF is being served this date upon all parties on the ECF notification list, by electronic

7

notification and via e-mail in accordance with Local Rule 6-3(b).

8

Dated:  January 21, 2009

9

10

11

/s/ Nichole T.  Browning

Nichole T. Browning

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28